650 So.2d 182 (1995)
The CITY OF JACKSONVILLE, a consolidated municipal corporation, Appellant,
v.
James M. WYNN, Mary Hildreth, Michael Thurgood, Wayne Riggins, D.W. Tredinick and James Kestner and Alice Kestner, his wife, Appellees.
No. 93-153.
District Court of Appeal of Florida, First District.
February 9, 1995.
Rehearing Denied March 10, 1995.
*183 Charles W. Arnold, Jr., General Counsel; Theresa R. Matchett, Loree L. French, Asst. Gen. Counsels, Jacksonville, for appellant.
Tyrie A. Boyer of Boyer, Tanzler & Boyer, P.A., Jacksonville, for appellees.
KAHN, Judge.
Appellees own properties in a Jacksonville residential subdivision known as Southside Estates. In 1991 they filed a three-count amended complaint against the City of Jacksonville. By Counts I and II, appellees sought a declaration that the City of Jacksonville's 2010 Comprehensive Plan (Plan) is null and void as to their property, and further sought an injunction prohibiting the City from imposing upon their property any use classification more restrictive than commercial use. Count III of the complaint alleged a taking without just compensation and sought inverse condemnation relief. After a nonjury trial, the circuit court entered judgment finding that the Plan "is invalid, as applied to the subject property, as being contrary to the enabling statute, to wit: Chapter 163, Florida Statutes." The court also enjoined the City from imposing upon the subject property any classification which *184 does not permit, as a minimum, those uses allowed under a zoning classification known as neighborhood commercial. Finally, the trial court found that a taking had occurred through operation of the Plan, but declined relief by way of inverse condemnation, since the injunctive remedy would alleviate the taking. We reverse the finding of Plan invalidity and order of injunctive relief, because the circuit court had no subject matter jurisdiction to determine whether Jacksonville's Plan is in compliance with Chapter 163, Florida Statutes, as the Plan applies to appellees' property. We also find that the taking claim was not ripe, and thus the trial court should not have considered it.

I
Appellees own six residential lots located near the north end of Southside Boulevard within a subdivision known as Southside Estates. Five of the lots are improved with single-family dwellings; one lot is vacant. Of the improved properties, two of the houses are owner-occupied and three are rented. The past and current use of the six lots is consistent with the RLD-G (Residential Low Density-G) single family zoning district and is also consistent with the LDR (Low Density Residential) category of the Future Land Use Map (FLUM) adopted by the City as part of the Plan. RLD-G and LDR are the applicable zoning and FLUM categories, respectively. Appellees Hildreth, Thurgood, Riggins, Kestner and Wynn all purchased their property for residential use. Kestner and Wynn continue to occupy their homes. Appellee Tredinick owns the vacant lot.
The essential contention raised by appellees at trial is that the nature of their property has gradually changed over the years as surrounding areas have become more and more commercially developed. They claim that their frontage on Southside Boulevard is not conducive to residential use. To this end, the owners' expert witness, Mr. Yeargin, stated that commercial zoning would be the highest and best use for the property, and if so zoned, each property would bring from $125,000 to $150,000. Yeargin also stated that the properties retained value as residential sites, with these values ranging from $20,000 for the vacant lot to $42,000 for one of the rental properties, to $56,000 for the property owned and occupied by Mr. Wynn. The evidence further established that the City will not rezone the property for commercial uses, since such a change of zoning would not comply with the Plan.[1]
In their complaint for declaratory and injunctive relief, appellees relied upon section 163.3177(2), Florida Statutes,[2] and section 163.3194(4)(a), Florida Statutes. Appellees point to two passages in particular: "The several elements of the comprehensive plan shall be consistent, and the comprehensive plan shall be economically feasible." § 163.3177(2), Fla. Stat. "A court, in reviewing local government action or development regulations under this act, may consider, among other things, the reasonableness of the comprehensive plan... ." § 163.3194(4)(a), Fla. Stat. The trial court framed the issues presented by appellees as follows:
a) Whether the Plan, as applied to the subject property, is invalid by virtue of being either unreasonable or not economically feasible?
b) Whether, if the Plan is not invalid as applied to the subject property, the effect thereof constitutes a taking for which Plaintiffs are entitled to compensation by way of inverse condemnation?
Having framed these issues, the trial court determined that restricting appellees' property to residential use has no substantial relationship to the promotion of the public health, safety, morals or general welfare; nor does the Plan, as applied, prevent some public evil or fill some public need. The court ruled that the Plan is not reasonable or economically feasible as applied to appellees' property within the contemplation of the two *185 statutory sections noted above, and therefore the Plan, as adopted by Jacksonville, is not in compliance with Chapter 163. The trial court found it would be unreasonable and contrary to economic feasibility to restrict the use of appellees' property to uses any less intensive than "neighborhood commercial" and accordingly enjoined the City from imposing any zoning category which does not permit, at a minimum, those uses allowed under neighborhood commercial.

II
The circuit court had no subject matter jurisdiction to determine whether Jacksonville's Comprehensive Plan was in compliance with Chapter 163, part II, Florida Statutes (the Act). An administrative hearing before a properly designated hearing officer of the Division of Administrative Hearings is, by statute, the sole proceeding or action for the determination of whether a local government's plan, or an element thereof, is in compliance with the Act. § 163.3184(13), Fla. Stat. The Department of Community Affairs, as the legislatively designated state planning agency, section 163.3164(20), Florida Statutes, must make an initial determination whether a local plan or amendment is in compliance with the Act. § 163.3184(8)(a), Fla. Stat. If the Department of Community Affairs issues a notice of intent to find that the comprehensive plan is in compliance with the Act, any affected person may file an administrative petition within 21 days after publication of the notice. Such affected person is then entitled to a hearing at which the comprehensive plan in question "shall be determined to be in compliance if the local government's determination of compliance is fairly debatable." § 163.3184(9), Fla. Stat. Thus, in cases where the Department of Community Affairs and the local government agree on the plan's compliance with the Act, the burden of proof upon a contestant in the administrative forum is quite strict.
If the Department of Community Affairs notices its intent to find a plan not in compliance with the Act, the matter is immediately forwarded to the Division of Administrative Hearings for a hearing which may be participated in by the local government, the Department of Community Affairs, and "any affected person who intervenes." § 163.3184(10)(a), Fla. Stat. Any intervenor challenging the local plan's compliance is then required to show by a preponderance of the evidence that the comprehensive plan is not in compliance. Id.
The language of section 163.3184(13) is explicit. The intent of the legislature, as clearly set out in the statute, is to provide the administrative forum as the "sole method for determining whether a local government plan is in compliance" with the Act. State Dep't of Community Affairs v. Lee County, 588 So.2d 272, 275 (Fla. 1st DCA 1991) (Kahn, J., concurring). The "reason for this legislative directive is to encourage uniform standards to be applied in the development and approval of comprehensive plans." Id.
The legislature had reason to deprive circuit courts of subject matter jurisdiction to determine plan consistency. Administrative jurisdiction avoids the danger of inconsistent results from circuit to circuit and even within a given circuit. At least two other Southside owners have raised a consistency challenge in the proper administrative forum. After an administrative hearing, and subsequent review by the Department of Community Affairs, the Department found the Jacksonville plan to be in compliance with chapter 163, specifically addressing the question of residential sites in Southside Estates. Department of Community Affairs v. City of Jacksonville, 16 F.A.L.R. 2478 (Fla.Dept. of Community Affairs 1994). Case by case judicial determination of plan consistency, as demonstrated by the result before us, may lead to spot zoning, in which a parcel of property could in effect be rezoned by a circuit judge who is not bound by all of the requirements of Chapter 163. In this case for instance, although the circuit judge has directed rezoning of six residential properties, no heed at all has been paid to the residential owners that abut or neighbor these six properties. The order in no way considers its impact upon the other owners, some of whom sought the correct administrative remedy. The order also does not acknowledge the "fairly debatable" standard applicable to an administrative compliance challenge where the Department *186 of Community Affairs has found a plan in compliance with the Act. § 163.3184(9)(a), Fla. Stat.
In their attempt to counter the apparent exclusivity provision of section 163.3184(13), appellees direct us to section 163.3194(4)(a), providing, "A court, in reviewing local governmental action or development regulations under this act, may consider, among other things, the reasonableness of the comprehensive plan, or element or elements thereof, relating to the issue justiciably raised... ." They reason that this statute expressly contemplates the type of action they have brought. Appellees' assertion is without merit, however, since the circuit court in this case did not review local governmental action or development regulations, but rather the validity of the Plan itself.
All of the owners, through their counsel, attempted to file requests for rezoning with the Jacksonville Zoning Department. See supra, n. 1. These requests were rejected at the ministerial level on the grounds that they were not in compliance with the Plan. The issues at trial, as framed by both appellees and by the trial court, did not deal with the propriety of the City's assertion that the requested zoning changes were not in compliance with the Plan. Rather, the issues raised went directly to the ultimate question of whether the Plan was in compliance with the Act. Our reading of section 163.3194 convinces us that this section was not intended to broadly justify a judicial challenge to the validity of a comprehensive plan. The statute is, rather, directed toward requiring that all land development regulations and governmental actions taken in regard to development orders are consistent with the adopted plan. § 163.3194(1)(a), Fla. Stat. Here it is undisputed that Jacksonville's denial of rezoning was consistent with the Plan. The statutory section relied upon by appellees does not exist as a "license to second guess the legislative body where there is simply the to-be-expected collision of the plan with private interests... ." Machado v. Musgrove, 519 So.2d 629, 635 (Fla. 3d DCA), rev. denied, 529 So.2d 694 (Fla. 1988). We find instructive Judge Cowart's concurring opinion in City of Cape Canaveral v. Mosher, 467 So.2d 468, 471 (Fla. 5th DCA 1985), which was adopted by the Third District in Machado:
A comprehensive land use plan legislatively sets a zoning norm for each zone. Under Section 163.3194(1), Fla. Stat., after adoption of such a plan, zoning changes should be made only when existing zoning is inconsistent with the plan; otherwise, the plan should be legislatively amended as to the area of the entire zone or as to the uses permitted within the entire zone. This is ... the only way to (1) regulate and maintain land use by zones; (2) make individual zoning changes, which are essentially executive action, conform to a legislated plan; and (3) avoid arbitrary "spot zoning" change that permits the use of individual parcels to depart from a plan.
Accordingly, in specific deference to the legislative directives of section 163.3184, we hold that a circuit court is not vested with subject matter jurisdiction to consider in the first instance whether a comprehensive plan, as applied to a given parcel of property, is in compliance with Chapter 163, part II, Florida Statutes.

III
The City also urges that the taking issue was not ripe for adjudication by the trial court. We find that the trial court had no means to make a legal determination whether a taking had occurred, as no final administrative decision had yet been made regarding whether the challenged regulation had any economic impact upon appellees' property. Moreover, appellees never even submitted for approval a cogent plan for development of their property in a manner other than its current use, or requested an amendment to the Plan.
A landowner must obtain a final decision regarding the application of a questionable regulation to a particular property, and must utilize state procedures which provide for obtaining just compensation. Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In Williamson County, the landowner sued the County Regional Planning Commission, *187 alleging that the application of various zoning laws and regulations to the owner's property, which the owner sought to develop, resulted in a taking. The Supreme Court disagreed with the argument:
Our reluctance to examine taking claims until ... a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although "[t]he question of what constitutes a `taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty," this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.
Id. at 190-91, 105 S.Ct. at 3118-19, 87 L.Ed.2d at 141 (citations omitted). Accord Glisson v. Alachua County, 558 So.2d 1030, 1035-36 (Fla. 1st DCA) ("[A] taking is not ripe for determination until such time as the property owner has received a final determination from the government as to the permissible uses of the property."), review denied, 570 So.2d 1304 (Fla. 1990). The impact and interference referenced in Williamson County cannot be ascertained until the local governmental authority has determined the nature and extent of the development that will be permitted. Eide v. Sarasota County, 908 F.2d 716 (11th Cir.1990). Similarly, in order for a due process takings claim[3] to be ripe, courts require the same final decision requirement as in the just compensation claim context; a court cannot determine that a regulation has gone too far until the court actually knows how far the regulation goes. Williamson County.
The final decision ripeness test used in Williamson County has also been applied to arbitrary and capricious due process claims (sometimes referred to as substantive due process claims) where a plaintiff argues that a regulation is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals or general welfare and is therefore an invalid exercise of the police power. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1577 (11th Cir.1989); Eide, 908 F.2d at 723.
As the Eleventh Circuit Court of Appeals explained in Eide, courts have confused the standards for just compensation, due process takings and arbitrary and capricious due process claims, and often one cannot tell which claim has been brought or which standard is being applied. This confusion may result in incorrect analyses of cases because different standards of ripeness are required for each of the three claims. Id. at 732. Regardless of the type of claim, however, the landowner must, at a minimum, always have received a final decision. The appellees have not met this burden. Notably, none of them has submitted any plan for the development of the property or sought a plan amendment. Before a taking claim can be considered, a city must be afforded the opportunity to apply the Plan to appellees' property.
In Eide, supra, the Eleventh Circuit rejected on ripeness grounds an owner's claim that Sarasota County violated his due process rights in applying a comprehensive plan to the owner's property. In that case, the court determined that Eide had not met his burden of showing that a final decision denying his desired zoning had been finally made and applied to his property. As the court observed, Eide had not submitted even a single plan for the commercial development of his property or a petition to rezone his property from its present residential zoning to commercial zoning. Accordingly, the county had not been given an opportunity to apply its plan to the property. Id. at 726.
Eide argued that further proceedings before the local government body would be futile, because the county was bound to follow Florida law requiring that all zoning be consistent with the plan, and that commercial zoning of his property would be inconsistent *188 with that plan. Appellees in the present case make an analogous argument. In rejecting this argument, however, the Eleventh Circuit pointed out:
... that Eide's determination of what is consistent with the sector plan is not controlling here; the County and the Florida courts are arbiters of what is consistent. As stated above, the sector plan does not rezone any land commercial or noncommercial; it merely dictates that all future development be consistent with it. Id. at 727.
Florida courts have also held that a taking issue is not ripe for decision by a court until an owner receives a final determination from the government as to the permissible uses of the property. Glisson v. Alachua County, supra; Moviematic v. County Commissioners, 349 So.2d 667 (Fla. 3d DCA 1977). Because appellees here have failed to obtain a final decision concerning application of the Plan to their property, their takings claim was not ripe for determination by the circuit court. Therefore, the trial court erred by considering the claim and ultimately finding that a taking had occurred.
REVERSED.
ERVIN and WOLF, JJ., concur.
NOTES
[1] This action does not purport to seek review of a development order, see sections 163.3194(3)(a), 163.3215(1), Florida Statutes, or of a denial of a zoning change. Accordingly, the City's refusal to consider the rezoning application is only relevant insofar as it shows the City enforced a zoning ordinance that is consistent with the FLUM.
[2] All references to Florida Statutes are to the compiled 1989 statutes, unless otherwise noted.
[3] See e.g. Tampa-Hillsborough County Expressway Authority v. AGWS Corp., 640 So.2d 54 (Fla. 1994); Joint Ventures, Inc. v. Department of Transportation, 563 So.2d 622 (Fla. 1990).