RAY, J.
Alachua Land Investors, LLC (ALI), appeals a final judgment entered in favor of City of Gainesville (City) on ALI’s action for inverse condemnation. ALI contends that the trial court’s ruling on ripeness constitutes error as a matter of law because ALI filed a meaningful application and obtained a final decision from the City. Given ALI’s failure to satisfy the ripeness requirement, we affirm.
I. Facts and Procedural History
ALI does not seek review of the trial court’s findings of fact. This action arose from the City’s denial of plat approval for the final development phase of the 300-acre Blues Creek residential subdivision owned by Larry and Bonnie Ross, through ALI. ALI and its predecessor developed this property over the years in a series of units and phases. The specific property involved in this litigation comprises 127 acres, thirty-seven of which ALI intended for residential development of Unit Five, Phases Two and Three. These two phases represent the last remaining stages of the *1157 extensive Blues Creek development. The other parcel within the 127 acres comprises ninety unimproved acres and is designated as a “Drainage Easement, Developed Recreation and Conservation Area” on the Blues Creek Master Plan (Master Plan). The conservation area is of particular significance in this litigation because it includes the most environmentally sensitive area in the Master Plan and is nearly surrounded by the developable portions of the Blues Creek subdivision. A waterway (Blues Creek) flows through the conservation area.
The Suwannee River Water Management District (SRWMD) permitted the ninety-acre conservation area for retention of surface water from the surrounding land. A third-party environmental group brought an administrative challenge to the conservation area permit, which resulted in a June 1988 negotiated settlement agreement between the landowner (ALI’s owner) and the environmental group. The SRWMD accepted the terms of the settlement agreement as an amendment to the permit. The settlement agreement includes the following land-use restrictions:
There shall be no construction or disturbance of the conservation area pre-or post-development, nor any developed recreation built in the conservation area, except for nature trails, walkover structures and gazebos which retain the land predominantly in its natural, scenic and wooded condition; or minor works necessary to control erosion or assure dispersion (sheetflow) of runoff entering the conservation area provided they are out of or at the boundary of the conservation area.
(emphasis added). This language appears in the Master Plan in substantially the same form. Additionally, under general notes, the Master Plan mandates that a fifty-foot construction buffer be provided on both sides of the Blues Creek center-line.
The Master Plan is a part of the existing zoning regulations governing ALI’s property. A city ordinance requires a plat application to conform with existing zoning requirements. Under the City’s ordinances, the City Commission is the only Gainesville governmental body that can grant final approval to a subdivision plat application. In its prior applications for proposed Phases Two and Three of Unit Five, ALI never proceeded through the full administrative process. Petition 76SUB was the first and only plat application that ALI submitted to the City Commission for a review and a vote on the request for design approval of these two phases. The petition indicated that a sanitary sewer line was projected to go through the ninety-acre conservation area for approximately 300 feet and across Blues Creek itself. Given the fact that ALI’s owner was directly involved in the negotiations that led to the settlement agreement, ALI knew of the land-use restrictions governing “construction or disturbance of the conservation area.”
In May 2008, the City Commission voted 5-2 to deny the petition. ALI filed an inverse condemnation action alleging a partial regulatory taking by the City in the denial of plat approval. The trial court found that the nature and location of the proposed sewer line violates the settlement agreement and is inconsistent with existing zoning regulations. The court determined that some evidence adduced at trial had addressed alternatives to the proposed sewer line across the conservation area. One alternative was a lift station, albeit at greater expense. Another option was to convert the eight lots (constituting Phase Three of Unit Five) into an “estate lot” served by a septic tank, subject to approval of a variance. Because ALI neither *1158 offered any revisions or other options, nor requested any change to accommodate its ultimate development plans, the court concluded that this claim is not yet ripe for litigation. We agree with this conclusion.
II. Law
The Fifth Amendment prevents the taking of private property for public use without just compensation and applies to the states through the Fourteenth Amendment. See U.S. Const. amend. V. & XIV; Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). Florida has its own “taking” provision in article X, section 6 of the Florida Constitution. A taking may result from a “physical invasion” of the property or may follow a “regulatory imposition.” Good v. United States, 189 F.3d 1355, 1360 (Fed.Cir.1999) (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014-16, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)); Keshbro, Inc. v. Miami, 801 So.2d 864, 869-70 (Fla.2001). “The general rule ... is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.” Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Whether the government has gone too far “depends on the particular facts.” Id. at 413.
ALI presented an as-applied challenge. “Any analysis in an as-applied regulatory taking claim must start with the threshold question of ripeness.... ” Riviera Beach v. Shillingburg, 659 So.2d 1174, 1180 (Fla. 4th DCA 1995) (noting that “Florida courts have ... adopted the ripeness requirement”). Ripeness presents a jurisdictional issue. See San Diego Gas & Elec. Co. v. San Diego, 450 U.S. 621, 633, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981). Ordinarily, a claim will not be ripe unless the claimant has made at least one “meaningful application.” MacDonald, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 352-53 & n. 8, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); Palm Beach Polo, Inc. v. Vill. of Wellington, 918 So.2d 988, 994, 997 (Fla. 4th DCA 2006) (affirming that a “takings” claim was not ripe for adjudication, given the landowner’s failure to present a meaningful application for amendment of the comprehensive plan); Martin Cnty. v. Section 28 P’ship, Ltd., 676 So.2d 532, 537 (Fla. 4th DCA 1996) (on mot. for reh’g, clarification, and certification); Shillingburg, 659 So.2d at 1180; Glisson v. Alachua Cnty., 558 So.2d 1030, 1036 (Fla. 1st DCA 1990). The landowner must take “reasonable and necessary steps to allow regulatory agencies to exercise them full discretion in considering the development plans for the property, including the opportunity to grant any variances or waivers allowed by law.” Palazzolo, 533 U.S. at 620-21, 121 S.Ct. 2448. The corollary is that the ripeness doctrine does not require a landowner who alleges a regulatory partial taking to file a meaningless, futile application to the governmental agency. See Eide v. Sarasota Cnty., 908 F.2d 716, 726 (11th Cir.1990) (on pet. for reh’g) (describing the “futility exception” to the “final decision” requirement); Shillingburg, 659 So.2d at 1181; McCole v. Marathon, 36 So.3d 750, 754 (Fla. 3d DCA 2010).
Another component of ripeness is finality. In the seminal decision in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court stated:
[ A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application *1159 of the regulations to the property at issue.
Id. at 186. This requirement of finality “applies to decisions about how a takings plaintiffs own land may be used,” and it reflects “the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer.” Suitum v. Tahoe Reg’l Planning Agency, 520 U.S. 725, 738, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); see Williamson Cnty., 473 U.S. at 190-91, 105 S.Ct. 3108. Williamson County and its progeny uphold “the important principle that a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation.” Palazzolo, 533 U.S. at 620, 121 S.Ct. 2448; see Greenbrier (Lake Cnty. Trust Co. No. 1391) v. United States, 40 Fed.Cl. 689, 702 & n. 12 (Fed.Cl.1998).
No bright-line test exists for determining how far the landowner must go in challenging the limits of allowable development under the regulations. See Williamson Cnty., 473 U.S. at 199, 105 S.Ct. 3108 (acknowledging that defining whether a regulation “goes too far” is a “difficult problem”). In Martin County v. Section 28 Partnership, Ltd., the Fourth District Court characterized the general law as follows:
It is a fair summary of the law that in “takings” eases involving permit denials and other land use restrictions, the landowner must meet the difficult burden of establishing that: (1) the regulation denies substantially all economically beneficial or productive use of the land; (2) alternative uses were applied for and conclusively denied by the regulatory body; and (3) at least one meaningful application has been filed under the existing regulations.
676 So.2d at 537; see MacDonald, Sommer & Frates, 477 U.S. at 349, 106 S.Ct. 2561; Williamson Cnty., 473 U.S. at 190-94, 105 S.Ct. 3108. As to the first requirement, the mere fact that the denial of a permit deprives a property owner of a particular use the owner deems most profitable or preferable does not demonstrate a taking. See Fox v. Treasure Coast Reg’l Planning Council, 442 So.2d 221, 226 (Fla. 1st DCA 1983); Fla. Game & Fresh Water Fish Comm’n v. Flotilla, Inc., 636 So.2d 761, 765 (Fla. 2d DCA 1994). In the case at bar, the “ripeness” inquiry relates especially to the second and third requirements listed in Martin County.
To satisfy the threshold ripeness test, ALI must demonstrate that Petition 76SUB was a meaningful application, that the City reached a final decision, and that the submission of an additional application for plat design approval would be meaningless and futile. With these legal principles in mind, we review de novo the trial court’s application of the law to the factual findings in determining that ALI’s claim is not yet legally ripe for consideration on the merits. See Lost Tree Vill. Corp. v. Vero Beach, 838 So.2d 561, 569 (Fla. 4th DCA 2002) (“[T]his court should review Lost Tree’s allegations de novo to determine whether it pled valid and ripe claims.”).
III. Analysis
ALI argues that the claim is ripe because a landowner is not required to submit more than one meaningful application. ALI contends that Petition 76SUB was a meaningful application, that the City made a final decision in denying the petition, and that any additional plat design application or revision would not change the City’s determination that a sanitary sewer line crossing the conservation area violates existing zoning regulations. Therefore, further applications would have been futile. *1160 The City asserts that Petition 76SUB was not a meaningful application under Riviera Beach v. Shillingburg and that ALI’s failure to seek alternatives impermissibly ignored the City’s overtures seeking a suitable resolution to the development of Phases Two and Three. The petition did not seek to challenge the validity of the zoning, to amend the terms of the zoning, or otherwise to seek relief from the zoning requirements. In other words, the denial of the petition is not a final decision.
Given the existing zoning regulations, ALI’s request to construct a sewer pipe through the conservation area and across the creek was bound to fail. The petition was not a meaningful application, for it denied the City an opportunity to exercise its full discretion in determining how ALI can implement the development plans for Phases Two and Three. See Palazzolo, 583 U.S. at 620-21, 121 S.Ct. 2448. ALI premised its proposal on a prohibited use in the conservation area that was self-imposed as a result of the negotiated settlement. The City is simply enforcing the terms of the landowner’s settlement agreement, which were incorporated into the Master Plan and the zoning regulations.
ALI took an inflexible, all-or-nothing approach in seeking approval of Petition 76SUB. The plat application presented no alternative design plan, nor did ALI seek to revise the application after the City’s vote. “Land use planning is not an all-or-nothing proposition.” MacDonald, Sommer & Frates, 477 U.S. at 347, 106 S.Ct. 2561 (noting that “[a] governmental entity is not required to permit a landowner to develop property to [the] full extent he might desire or be charged with an unconstitutional taking of the property”). Good faith and reasonableness are integral elements of any meaningful application. See Good v. United States, 39 Fed.Cl. 81, 102-03 (Fed.Cl.1997) (“By requiring developers to make a good faith effort to satisfy permitting agency concerns after an initial denial, ripeness doctrine reflects the reality that land development often involves a process of negotiation between the permitting agency and developer.”), aff'd, 189 F.3d at 1355. Rather than address any alternatives for achieving its ultimate residential development goals, ALI focuses unreasonably on the proposal to run the sewer pipe through the conservation area and across the creek. In construing the issue so narrowly, ALI effectively removes any discretion on the part of the City to consider other options for ALI to complete Phases Two and Three. The trial court found that the parties originally had discussed viable alternatives to running the sewer line through the conservation area, and that such alternatives were available, even if more costly. After the City’s denial of the petition, however, ALI immediately filed suit rather than propose any revisions or seek any changes.
The posture of this case is similar to the circumstances in Tinnerman v. Palm Beach County, 641 So.2d 523 (Fla. 4th DCA 1994), where the ripeness issue concerned whether the Palm Beach Board of County Commissioners’ (Board) resolution was a final decision. Id. at 525. The Board imposed a temporary moratorium on a building permit for the construction of a large office warehouse. Id. at 524-25. The landowners made no effort to ascertain whether an alternative development plan would have persuaded the Board to lift the moratorium; instead, the landowners filed a claim for inverse condemnation. Id. at 525.
Affirming the trial court’s conclusion that the claim was not yet ripe, the Fourth District Court recognized that the landowners had sought neither a modification nor a variance, even though the applicable *1161 regulations allowed many different uses as well as development levels. Id. at 525-27. The owners had requested a more intensive use of the parcel without seeking to obtain the Board’s approval of any less intensive use. Id. at 526. Like ALI, the landowners in Tinnerman argued it would have been futile to seek any other options. Id. Rejecting this argument as purely speculative, the appellate court recognized that ripeness requires “a firm delineation of permitted uses so that the extent of the taking can be analyzed.” Id. Citing the “meaningful application” requirement, the court also reasoned that the landowners had not allowed the regulatory agency to exercise its full discretion. The appellate panel pointed to the commissioners’ comments indicating that the Board may have been open to other uses of the property. Id.; see Palazzolo, 533 U.S. at 620-21, 121 S.Ct. 2448; Greenbrier, 40 Fed.Cl. at 702 & n. 12.
Similarly, the City Commission’s vote denying Petition 76SUB lacked the requisite finality to render this case ripe for review on the merits. As in Tinnerman, the question of what the City Commission would have done if ALI had proposed any alternatives remains open. At the City Commission hearing, a representative of the City (Ms. Massey) opined that what ALI was proposing in its plat design application is inconsistent with the land uses allowed in the Master Plan. To change it, ALI would have to submit a plan development amendment. Commissioner Lowe voiced similar concerns about whether the application is consistent with the Master Plan. Commissioner Donovan opined that ALI seemed to have developmental rights if it “would only develop a plan” acknowledging certain requirements. Donovan agreed with other commissioners to “give [ALI] a second chance.” Commissioner Henry expressed discomfort with completely voting down the plat application, suggesting instead that ALI consult with the City to determine what was needed “to make this work” and allow ALI to come back with a feasible plan. Commissioner Bryant urged ALI to continue working with the City in seeking to resolve the land-use issues. Mayor Hanrahan addressed possible redesign options upon the City’s disapproval of Petition 76SUB, so that ALI could return to the City for reconsideration without the usual, prolonged delays.
The clear message of a majority of the City’s ultimate land-use decision-makers was that they wanted to reach a mutually agreeable resolution of ALI’s ultimate development plans. It is also noteworthy that the developers of the Blues Creek subdivision have enjoyed a successful, long-term working relationship with the City. See Lost Tree Vill. Corp., 838 So.2d at 573 (recognizing the relevance of the working relationship between the landowner and the governmental entity in determining whether a decision is final and whether the submission of an additional application would be futile). Historically, the City Commission had granted final approval of every other Blues Creek plat approval petition (regarding other units and phases) that ALI submitted. Given these circumstances, the record belies ALI’s argument that the City’s vote on Petition 76SUB was a definitive, final decision on a meaningful application for purposes of the ripeness inquiry. See Tinnerman, 641 So.2d at 525 (“[T]he ripeness requirement of a final decision requires more than procedural finality because it includes an opportunity for government to change its mind.”). Additionally, where its options were not fully exercised, ALI has not demonstrated that the futility doctrine applies here. See McKee v. Tallahassee, 664 So.2d 333, 334 (Fla. 1st DCA 1995) (concluding that the city’s decision was not *1162 “final,” the futility doctrine did not apply, and the “taking” claim was not ripe, where the municipal board denied a variance from development restrictions, but city officials repeatedly assured the landowner that a properly drafted, meaningful application for a variance, with a required development plan, would receive a positive review).
ALI relies in part on Palazzolo v. Rhode Island, 533 U.S. at 606, 121 S.Ct. 2448 to support the argument that this claim is ripe. From the record, it is evident that the circumstances that led to the City Commission’s denial of ALI’s petition are significantly different from the situation in Palazzolo. In that case, the state’s unequivocal ruling that the regulations wholly prevented the development plans on environmentally sensitive land rendered that case ripe for review. Id. at 619-20. Palazzolo and associates owned Rhode Island waterfront property, a large portion of which comprised low-lying salt marshland subject to tidal flooding. Id. at bills. Attempting to develop the property, Palazzolo sought fill permits for approximately twenty acres because the moist ground and permeable soil would require substantial fill to accommodate the building of significant structures. Id. at 613-14. After the initial proposal failed, Palaz-zolo submitted two more proposals, one of which was a less ambitious plan to build a private beach club. The state denied these other proposals as well. Id. at 614. Years later, Palazzolo submitted a new plan that included the construction of a wooden bulkhead around a pond and the placement of fill throughout the remainder of the marshland. After the denial of that proposal, Palazzolo revived the plan for a private beach club, which the state denied. Id. at 614-15.
On certiorari, the United States Supreme Court noted that nothing in the record indicated that the state would have accepted the permit application had the proposed beach club occupied a smaller surface area, given the state’s interpretation of the governing regulations as barring Palazzolo from engaging in any filling or development activity whatsoever on the property. Id. at 620-21. As no additional application was needed to clarify the extent of development permitted by the wetlands regulations, Palazzolo had no further obligation to pursue his claim before the agency, and the issue was ripe for judicial review. Id. at 621-22; cf. Lucas, 505 U.S. at 1011-13 & n. 3, 112 S.Ct. 2886 (rejecting argument that the claim was not ripe and noting that the submission of a plan to develop the landowner’s property “would have been pointless,” given the regulatory council’s stipulation that no building permit would have been issued).
This is not the situation in the case before us. ALI wanted to develop the final residential stages of the Blues Creek subdivision on thirty-seven acres. The landowner acknowledged that the ninety-acre conservation parcel is the most environmentally sensitive area of the property. During the extended time period when ALI was working with the City to develop this final phase, the parties discussed viable alternatives to running a sanitary sewer pipe through the conservation area. In Palazzolo, however, the owners’ property was almost entirely salt marshland. No alternatives were available because Palaz-zolo’s multiple proposals would have required substantial fill on the protected land, a use that the state absolutely prohibited. In contrast, ALI’s ultimate goal is to build residences on acreage outside the environmentally protected conservation area. Because ALI pursued only one course and failed to address any other previously discussed options, the record supports the trial court’s determination *1163 that this case is not yet ripe for litigation. See Shillingburg, 659 So.2d at 1180.
Like the landowners in Tinnerman v. Palm Beach County, ALI has not given the City a meaningful opportunity to fully exercise its discretion. See MacDonald, Sommer & Frates, 477 U.S. at 342-43, 351-52, 106 S.Ct. 2561 (concluding that the property owner, who alleged a “taking” claim, had not met the finality requirement, even though the planning commission denied the landowner’s sole subdivision proposal and the county board of supervisors affirmed because the tentative subdivision map was inconsistent with the general county plan and with specific zoning regulations; the record held open “the possibility that some development [would] be permitted”); Williamson Cnty., 473 U.S. at 190, 193-94, 105 S.Ct. 3108 (concluding that the planning commission’s refusal to approve the preliminary plat was not a definitive final determination as to whether the landowner would be “denied all reasonable beneficial use of its property,” where the landowner failed to follow procedures for seeking a variance).
The parties agree that ALI had to submit at least one meaningful plat application and receive a clear, definitive final decision from the City before this claim would be ripe for judicial review. See Shillingburg, 659 So.2d at 1180. In its initial brief, ALI asks how this claim could not be ripe after the City Commission’s denial of the petition. The answer to this question lies in the record, as memorialized in the trial court’s unchallenged findings of fact. In Petition 76SUB, ALI unreasonably sought approval of a plat application that incorporated a previously negotiated prohibited use. The parties had discussed various alternatives, and the City had explained the procedures for seeking changes during their extensive, ongoing communications. The history of the parties’ dealings, and especially the transcript of the petition hearing, clearly demonstrate the City’s interest in continuing to work with ALI to explore alternatives and to attempt to resolve their differences so that ALI could realize its ultimate development goals. Despite the existence of other potential alternatives and the possibility of revising its application for plat design approval, ALI failed to give the City Commission a meaningful application that would afford the City an opportunity to fully exercise its discretion over the land-use issues presented. See Hodel v. Va. Surface Mining & Reclamation Ass’n, Inc., 452 U.S. 264, 297, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (“The potential for such administrative solutions confirms the conclusion that the taking issue decided by the [trial court] simply is not ripe for judicial resolution.”); Lost Tree Vill. Corp., 838 So.2d at 571.
Because the facts and law support the trial court’s conclusion on ripeness, we AFFIRM the final judgment. Given our holding on this threshold jurisdictional issue, we do not address the trial court’s discussion of the merits of this case.
PADOVANO and MAKAR, JJ., concur.