575 So.2d 521 (1991)
STATE of Louisiana
v.
Jose VANDERLINDER.
No. 90-KA-678.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 1991.
Writ Denied May 17, 1991.
*522 Dorothy A. Pendergast, Ronald Gracianette, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
Kevin V. Boshea, New Orleans, for defendant/appellant.
Before KLIEBERT, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Jose Vanderlinder, was convicted of possession of cocaine in an amount over 400 grams in violation of LSA-R.S. 40:967 and was sentenced to serve twenty-five years at hard labor. This court reversed the conviction and sentence on appeal and remanded the matter for a new trial. State v. Vanderlinder, 552 So.2d 1274 (La.App. 5th Cir.1989).
Defendant filed a motion to suppress the evidence in the new proceeding which was subsequently denied by the trial court. The defendant withdrew his former plea of not guilty and entered a plea of guilty as charged while reserving his right to appeal the denial of his motion to suppress in accordance with State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced the defendant to serve fifteen years at hard labor without benefit of parole, probation or suspension of sentence. A defense motion for appeal was granted.
The facts of this case were detailed in State v. Vanderlinder, supra, 552 So.2d at 1275 as follows:
At about 8:00 p.m. on December 27, 1987, Detectives Davis and Simone of the Jefferson Parish Sheriff's office, narcotics division, went to the New Orleans International airport to meet with a Delta Airlines employee who had telephoned Detective Davis. Acting on information obtained from the Delta employee, the detectives retrieved a certain piece of luggage which arrived on Delta flight 535 at 10:00 p.m. The piece of luggage in question, a black suitcase with a tag giving the owner's name as Jose Ramirez and a Florida address, had been mishandled in Miami and sent first to Atlanta by Delta employees.
At Detective Davis' request, Agent Pat McCumber, who is assigned to the Sheriff's office and handles drug detector dogs, arrived at the airport to conduct a "luggage line-up." As the officers brought the suitcase into the baggage room to set up the line-up, Detective Davis noticed the defendant step out of the line formed in front of the baggage claim office and look at the suitcase and the officers. The defendant repeated the action a second time but this time he turned and began walking hastily toward the exit. As he walked away the defendant motioned to Juan Medina who was in the opposite end of the baggage claim area. The men met and retreated together rapidly to the door.

*523 Officers Davis and Simone caught up to the defendants and asked for identification. Vanderlinder produced a resident alien card. In response to Officer Simone's request for additional identification, Vanderlinder produced some papers from his hip pocket. Simone testified that he noticed one of the papers was part of a match box cover with the name "Jose Ramirez" and "no. 168, 2:25 P.M. to New Orleans" written on it.
At this point the officers asked the men to accompany them to the baggage claim area. When asked, both men denied any knowledge of the suitcase. The "luggage line-up" was set up and the dog indicated the black suitcase contained contraband by scratching on it.
Vanderlinder and Medina were searched. Simone found a key and a Delta Airlines lost baggage claim receipt with the name Jose Ramirez on it in Vanderlinder's pocket. The key fit the black suitcase which was opened by Davis to reveal two packets, each containing a white powdery substance later identified as cocaine. One packet weighed 998.5 grams and was 97% cocaine; the other weighed 877 grams and was 90% cocaine. Vanderlinder was taken into custody and this prosecution ensued.
On appeal the defendant challenges the denial of his motion to suppress. Finding no merit in his argument that the officers "did not have sufficient articulable facts regarding criminal activity to support a finding of reasonable suspicion so as to justify the investigatory stop," we affirm.
The Fourth Amendment of the United States Constitution provides personal security to individuals against unreasonable searches and seizures by government officials. That protection is extended to actions by state officials through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). A prohibition against unreasonable searches and seizures is contained in Article 1, Section 5 of the Louisiana Constitution. The privacy rights granted by the Louisiana Constitution afford a higher standard of individual liberty than those granted by the federal constitution. State v. Hernandez, 410 So.2d 1381 (La.1982); State v. Church, 538 So.2d 993 (La.1989).
Warrantless searches and seizures are unreasonable per se unless justified by a specific exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). Certain seizures are justified under the Fourth Amendment if there exists reasonable suspicion that a person has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion of criminal activity warrants a temporary seizure to conduct questioning limited to the purpose of the stop. U.S. v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). That jurisprudence is codified in Louisiana in LSA-C. Cr.P. art. 215.1 which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
This court recently discussed, in depth, reasonable suspicion in the context of justification for airport detentions in State v. Davis, 547 So.2d 1367 (La.App. 5th Cir. 1989) writ den 556 So.2d 53 (La.1990). Citing U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) we stated:
A fair reading of the Sokolow opinion indicates that the specific and articulable facts to which a law enforcement officer must be able to point in justifying an investigatory stop are to be evaluated in light of all circumstances surrounding the particular incident. A court's inquiry into the existence of reasonable suspicion should entail practical consideration of the cumulative effect of all facts articulated by the officer, further taking into account the probative value of such facts to the trained law enforcement official observing them.
A review of the facts in the instant case indicates adequate grounds existed *524 for an investigatory stop of the defendant. The defendant and Juan Medina arrived from Miami, a source city for drug importation. They behaved nervously, watching the luggage turnstile after every flight arrived for about two hours. Their behavior while making a claim for the mishandled luggage prompted airline officials to become suspicious and alert authorities. When the luggage, due to arrive on Flight 168 from Miami arrived, on a later flight, officers Davis and Simone retrieved the suitcase and placed it in a "luggage line-up." The officers observed the defendant and his companion nervously watching the officers and then hastily retreating toward the exit.
We find that the officers had reasonable suspicion for an investigatory stop at this point. The officers approached the defendant and Medina, identified themselves as police officers and asked if the men would mind speaking to them. Both men agreed. A matchbox cover with "Jose Remirez # 168 2:25 PM to New Orleans" written on it which was removed by the defendant from his pocket along with other identification papers supplied in response to officer Simone's request for identification.
Using the "totality of the circumstances" standard, the foregoing facts constitute sufficient grounds for a finding of reasonable suspicion to justify an investigatory stop. Moreover, these facts must be considered in light of the fact that Officer Davis has specific training and considerable experience on the narcotics squad in airport surveillance.
After a careful review of the record and testimony in both this appeal and the previous appeal, made part of this record, we find justification for an investigatory stop.
This assignment is without merit.
A review of the record for errors patent reveals that the defendant's sentence is illegally lenient in that no fine was imposed as required by LSA-R.S. 40:967 F(1)(c). However, when as here, the state fails to raise the issue by motion or argument to the court the error will not be corrected on appeal. State v. Fraser, 484 So.2d 122 (La. 1986); State v. Mayeux, 556 So.2d 142 (La.App. 5th Cir.1990). We also note that the defendant was not arraigned in the second proceeding. However, such a defect is waived if the defendant pleads to the indictment without objection. LSA-C. Cr.P. art. 555.
For the foregoing reasons the defendant's conviction and sentence are affirmed.
AFFIRMED.