838 So.2d 561 (2002)
LOST TREE VILLAGE CORPORATION, Appellant,
v.
CITY OF VERO BEACH and the Town of Indian River Shores, Appellees.
No. 4D01-3954.
District Court of Appeal of Florida, Fourth District.
November 13, 2002.
Rehearing Denied December 23, 2002.
*564 Jack J. Aiello and Ernest A. Cox, III of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellant.
John K. Shubin and Jeffrey S. Bass of Shubin & Bass, P.A., Miami, and Julie B. Schutta, Vero Beach, for appellee City of Vero Beach.
Kenneth G. Oertel and Jeffrey Brown of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee, for appellee Town of Indian River Shores.
WARNER, J.
Lost Tree Village Corporation appeals a final judgment dismissing its eleven count complaint alleging inverse condemnation of its property by the City of Vero Beach and The Town of Indian River Shores. Lost Tree's property consists of two groups of islands in the Indian River Lagoon. The trial court concluded that none of the claims were ripe for adjudication because Lost Tree had not obtained a final determination of the uses that would be permitted on the islands. While Lost Tree's claims alleging a facial taking of its property were properly dismissed, albeit not on ripeness grounds, we hold that its claims alleging an "as-applied" taking of its Inner Islands were ripe for adjudication, although those claims alleging a taking of its Outer Islands are not ripe. We therefore hold that the trial court erred in dismissing the claims related to the Inner Islands.
The Lost Tree Islands consist of "islands and submerged lands in the Indian River Lagoon ... located partially within the Town and partially within the City." The islands are divided into two groups: the Inner Islands are located entirely within the Town, while the Outer Islands are located partially within the Town and partially within the City. Lost Tree owns the submerged land between and among the Inner Islands and between and among the Outer Islands, but the Trustees of the Internal Improvement Trust Fund ("IITF") own the submerged land between the Inner and Outer Islands, called Gifford *565 Cut.[1] Presently, the Lost Tree Islands are undeveloped and have no bridge access. A basic map of the islands and surrounding area is attached hereto as an appendix.
Lost Tree claims the City and Town have, through the combined force of their individual respective regulations, precluded any economically viable use of the Lost Tree Islands. Lost Tree sought to develop single family homes on the Inner Islands within the Town. To access those homes, it applied to build a bridge from a road located within the City to the islands. However, when the City denied Lost Tree's application, and the Town would not allow the homes to be built without bridge access, Lost Tree brought the instant takings claims against both municipalities.

The City Regulations
In the late 1980s, Lost Tree met with the City to discuss its plans to develop the Islands. The City's existing zoning regulations permitted Lost Tree to build five units per acre. Around that same time, the City had approved an application to develop Prang Island, another undeveloped and unbridged island in the Indian River Lagoon. Unfortunately for Lost Tree, the Prang Island approval prompted the City's Mayor to announce the City's intention to purchase and prohibit further development of any undeveloped islands, especially the Lost Tree Islands.
Consistent with that announcement, in December 1989, the City established a new zoning district, R-1AAA. R-1AAA restricted density to one unit per two acres, made single family residential use a conditional use, severely restricted fill or regrading of property, required an environmental assessment, and required at least 80% of each site to be open space. In July 1990, the City rezoned the portion of the Lost Tree Islands within the City to R-1AAA. Also in early 1990, the City enacted the following "no bridgehead" ordinance:
No property shall be used as a bridgehead property for an island that is undeveloped as of the date of this ordinance when said use shall have its public purpose the connection with any public right-of-way in the city of Vero Beach. Further, if said property is not within the City's jurisdiction but is immediately contiguous thereto, the city shall prohibit, by erection of barriers, any connection with the city right-of-way.
This ordinance effectively precludes bridge access from the City's main barrier island to the Inner Islands located within the Town.
Around that same time, the City decided to adopt a new Comprehensive Plan. The Department of Community Affairs ("DCA") petitioned the Division of Administrative Hearings ("DOAH") to determine whether this new Plan complied with chapter 163, Florida Statutes and the Florida Administrative Code. Lost Tree intervened. The DCA and the City eventually settled in July 1992 after the City agreed to certain remedial amendments. As amended, the City's new Plan included, inter alia, a provision similar to the "no bridgehead" ordinance and another provision restricting density on the islands even further than R-1AAA zoning to one unit every five acres. Lost Tree challenged the DCA's determination that the amended Plan complied with applicable law. In May 2001, the DCA entered its final order, *566 finding the Plan in compliance. According to Lost Tree, the rezoning, no bridgehead ordinance, and the new Plan were all specifically designed to preclude development of the Lost Tree Islands. The City Mayor allegedly made the following statements regarding development of the islands:
I'll stop it, I hope. We're playing hardball, because we don't want those islands developed. What I'm hoping to do is stall development of them until we can find some mechanism to purchase them.
I'm not denying this bridgehead ordinance is forestalling action until we can find a way to purchase these undeveloped islands.
Other members of the City government made similar statements in public and to the Governor and Cabinet.

The Town's Regulations
In December 1989, Lost Tree submitted a preliminary application to the Town, seeking approval to develop the Inner Islands under the existing regulations allowing one unit per acre. Due in part to organized citizen opposition to developing the Lost Tree Islands, the Town, similar to the City, set out to purchase the islands or otherwise minimize development. Town officials had allegedly stated the Town's intention to purchase the Lost Tree Islands to prevent their development. As a result, the Town denied Lost Tree's application. The Town then adopted a new zoning law, allowing one unit per five acres.
In May 1990, the Town adopted a new Comprehensive Plan. The new Plan limited development of "environmentally sensitive islands," such as the Lost Tree Islands, to one unit per five acres and prohibited development on unbridged islands within the Indian River Lagoon unless road and bridge permits were approved by the appropriate agencies. Lost Tree petitioned the DCA, challenging the Plan's compliance with applicable law. The Administrative Law Judge ("ALJ") who heard the case recommended that the Town's Plan was not in compliance with the state's Comprehensive Plan, because its prohibition on developing unbridged islands was "in effect, an absolute bar to development." The DCA rejected the ALJ's recommendation and found the Town's Plan in compliance.

Lost Tree's Applications to Develop
Despite the City's "no bridgehead" ordinance, Lost Tree contended, "the only route to bridge the Inner Islands [in Town] is to connect them to the mainland via Silver Shores Road, which is located in the City." Accordingly, it submitted an application to the City to build a bridge to the Inner Islands from its property at the end of Silver Shores Road. The City granted the application, provided it rescinded the "no bridgehead" ordinance and other related provisions in the City's Comprehensive Plan. That recision has not occurred.
In November 1998, Lost Tree submitted a separate application to the Town for preliminary plat approval of a fifty-seven unit development on ninety acres of the Inner Islands. However, without the needed bridge, the Town rejected the application in January 1999. According to Lost Tree, the Town's "no development without bridges" provision combined with the City's "no bridgehead" provision, precludes any uses of the Lost Tree Islands within the Town.

Court Action
In May 1998, Lost Tree filed suit against the City. The suit was abated, pending the DCA proceedings wherein Lost Tree was challenging many of the provisions at issue in the complaint. After the DCA entered its final order in May 2001, finding the City's Comprehensive *567 Plan in compliance (the DCA also found the Town's Plan in compliance), the court lifted the abatement. Lost Tree stated that it did not intend to appeal the DCA's compliance determination.
In June 2001, Lost Tree filed an amended complaint, adding the Town as a defendant. The complaint alleges that Lost Tree's claims are ripe for review and, based on statements by City and Town officials, any further attempts to apply for development approval would be futile.
Counts I-III are titled "per se" claims. As to the Inner Islands, Count I claims the combined effect of the City and Town regulations preclude all economically viable use. Specifically, the City prohibits building a bridge at the only possible location, Silver Shores Road, and the Town prohibits any development without bridge access. As to the Outer Islands within the Town, because Lost Tree owns neither the submerged land between the Outer Islands and the mainland nor the submerged land between the Outer and Inner Islands, Count II claims that the Town's "no development without bridges" provision precludes all development of the Outer Islands within the Town. As to the Outer Islands within the City, Count III claims that the City's R-1AAA zoning provision, with its density, grading, and open space regulations, precludes all economically viable use of those islands.
Counts IV, V, and VI constitute "balancing of factors" or "as-applied" takings claims against both municipalities collectively (count IV) and against each respectively (count V: City, count VI: Town). All three counts allege that the applicable provisions precluding development did not exist when Lost Tree bought the land or initially applied to develop. Because the provisions "do not substantially advance a legitimate government interest," "curtail Lost Tree's reasonable, investment-backed expectations," and "have been arbitrarily and capriciously applied only to Lost Tree's property," the three counts allege the municipalities' provisions effect unconstitutional takings.
Count VII alleges a vehicular access takings claim against the City. Specifically, the City's "no bridgehead" provision deprives Lost Tree of its sole access because the only means of vehicular access to the islands is building a bridge from Silver Shores Road in the City.
Counts VIII-X allege other constitutional claims. Counts VIII and IX allege arbitrary and capricious substantive due process claims. Count VIII alleges the City and Town enacted regulations to decrease Lost Tree Islands' value in order to accomplish their stated goal of acquiring the islands. Count IX alleges the provisions, as applied to the islands, "constitute discriminatory spot zoning targeted directly to frustrate Lost Tree's efforts to develop its islands" and "decrease the cost of public acquisition of the Lost Tree Islands." Count X alleges an equal protection claim, in that the City and Town singled out Lost Tree's proposed development without a legitimate governmental purpose for their disparate treatment. Finally, Count XI alleges a temporary takings claim, asserting that if the provisions are repealed or declared unconstitutional, Lost Tree should be compensated for the time they were in effect.
The City moved to dismiss, and in the alternative for summary judgment, on the following five grounds: failure to state a cause of action, the as-applied claims were not ripe, failure to exhaust administrative remedies, laches, and statute of limitations. The Town also moved to dismiss, and in the alternative to strike allegations, including ripeness.
*568 The trial court granted both defendants' motions and dismissed the case, stating:
Despite alleged public comments, preliminary decisions and legal positions taken by Defendants' officials, staff, boards, committees and representatives, Plaintiff has failed to allege (and admittedly cannot allege) that it has presented a final procedurally proper application to develop its subject property to either Defendant which has been finally denied. Thus, Plaintiff's claims are premature and it is unable to validly allege, claim, suspect or doubt that any of its constitutional or statutory rights have been violated or subject to consideration against these Defendants at this time.
Lost Tree moved for rehearing, asserting that its as-applied takings claims as to the Inner Islands were ripe because it had submitted proper applications. It applied to construct a bridge from Silver Shores Road to the Inner Islands, which the City effectively denied by conditioning approval on a condition it would never satisfy. The Town denied its preliminary applications to develop the Inner Islands unless Lost Tree obtained approval from the City to construct bridge access. Lost Tree admitted that it has not made an as-applied claim as to the Outer Islands.
Lost Tree also maintained on rehearing that neither its facial takings claims (counts II-III and V-VII and portions of counts I, IV, and XI) nor its facial substantive due process and equal protection claims were subject to the ripeness requirement. Finally, Lost Tree urged that, at a minimum, it should be allowed to amend its complaint. The court denied rehearing, prompting this appeal.
Lost Tree asserts the trial court erred in dismissing its complaint for three reasons: (1) it ripened its as-applied takings claims by submitting sufficient applications and obtaining a final development decision; (2) even if it had not, further efforts to obtain a final decision would be futile; and (3) certain claims are not subject to the ripeness requirement. The City answers that the facts alleged in the complaint fail to demonstrate the claims are ripe. The Town similarly answers that the facts pled do not support the conclusory allegation that the Town's actions preclude all allowable uses for the islands. Based on the facts of this case, some claims were properly dismissed, but other claims should have been allowed to proceed.

Combined Liability of City and Town
Lost Tree's takings claims, both facial and applied, rely upon the combined effect of the City's "no bridgehead" ordinance with the Town's "no development without bridge" ordinance, which effect deprives it from using its property in an economically viable manner. The City and Town each argues that because their respective regulations do not solely deprive Lost Tree from using its property, neither can be liable for payment of compensation. We reject that reasoning.
The Constitutions of the United States and the State of Florida both provide that no private property shall be taken except for a public purpose and with just compensation. U.S. Const. amend. V; Art. X, § 6, Fla. Const. Both Constitutional provisions emphasize the taking of the property, not the governmental unit responsible for the taking. As was stated in Ciampetti v. United States, 18 Cl.Ct. 548, 556 (Cl.Ct.1989), "[a]ssuming that no economically viable use remains for the property, the Constitution could not countenance a circumstance in which there was no fifth amendment remedy merely because two government entities acting jointly or severally caused a taking." Multi-government action, of which the combined effect deprives a landowner, constitutes a *569 taking: "As a general principle, two levels of government should not be able to avoid responsibility for a taking of property merely because neither of their actions, considered individually, would unconstitutionally infringe upon private property rights.... Government decisions are not produced in a vacuum."
Charles E. Harris, Environmental Regulations, Zoning and Withheld Municipal Services: Takings of Property by Multi-Government Action, 25 U. Fla. L.Rev. 635, 683 (1973). See also Anhoco Corp. v. Dade County, 144 So.2d 793, 797 (Fla.1962) (holding multiple governmental units engaged in a cooperative effort to obtain property can all be liable for the taking of property). While there may be issues of damage apportionment in such a case, that does not bar the claim and permit the taking without compensation. The Constitution entitles the landowner to a remedy.

Standard of Review
In Taylor v. City of Riviera Beach, 801 So.2d 259 (Fla. 4th DCA 2001), this court addressed a regulatory takings claim dismissed on ripeness grounds. It set forth the standard of review as follows:
In order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief. A court may not go beyond the four corners of the complaint and must accept the facts alleged therein and exhibits attached as true. All reasonable inferences must be drawn in favor of the pleader. "Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, the ruling on a motion to dismiss for failure to state a cause of action is subject to de novo standard of review."
Id. at 262 (citations omitted) (quoting Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 495 (Fla. 4th DCA 2001)); see also Brandon v. Pinellas County, 141 So.2d 278, 279 (Fla. 2d DCA 1962) (noting mere opinions or conclusions unsupported by specific facts are not presumed true at motion to dismiss stage). Thus, this court should review Lost Tree's allegations de novo to determine whether it pled valid and ripe claims.

Takings and Ripeness Jurisprudence
The Supreme Court concisely set out the development of regulatory takings jurisprudence in Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001):
In Pennsylvania Coal Co. v. Mahon, 260 U.S. 393[, 43 S.Ct. 158, 67 L.Ed. 322] (1922), the Court recognized that there will be instances when government actions do not encroach upon or occupy the property yet still affect and limit its use to such an extent that a taking occurs. In Justice Holmes' well-known, if less than self-defining, formulation, "while property may be regulated to a certain extent, if a regulation goes too far it will be recognized as a taking." Id. at 415[, 43 S.Ct. 158].
Since Mahon, we have given some, but not too specific, guidance to courts confronted with deciding whether a particular government action goes too far and effects a regulatory taking. First, we have observed, with certain qualifications, see infra at 2463-2464, that a regulation which "denies all economically beneficial or productive use of land" will require compensation under the Takings Clause. Lucas [v. S. Carolina Coastal Council ], 505 U.S. [1003], at 1015, 112 S.Ct. 2886[, 120 L.Ed.2d 798]; see also id., at 1035, 112 S.Ct. 2886 (KENNEDY, J., concurring); Agins v. City of Tiburon, 447 U.S. 255, 261, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Where a regulation places limitations on land that fall short of eliminating all *570 economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action. Penn Central [Transp. Co. v. City of New York, 438 U.S. 104], supra, at 124, 98 S.Ct. 2646[, 57 L.Ed.2d 631].
(Emphasis added).
Important to a takings claim analysis is the requirement that the claim be "ripe" before a taking can be declared. Again, the Palazzolo court explained:
In Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court explained the requirement that a takings claim must be ripe. The Court held that a takings claim challenging the application of land-use regulations is not ripe unless "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id., at 186, 105 S.Ct. 3108. A final decision by the responsible state agency informs the constitutional determination whether a regulation has deprived a landowner of "all economically beneficial use" of the property, see Lucas, supra, at 1015, 112 S.Ct. 2886, or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred, see Penn Central, supra, at 124, 98 S.Ct. 2646. These matters cannot be resolved in definitive terms until a court knows "the extent of permitted development" on the land in question. MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).
Palazzolo, 533 U.S. 606, 618, 121 S.Ct. 2448 (emphasis added). The ripeness inquiry thus centers on whether the landowner "obtained a final decision from the [regulatory agency] determining the permitted use for the land." Id.; accord Taylor v. Vill. of N. Palm Beach, 659 So.2d 1167, 1173 (Fla. 4th DCA 1995) ("Florida courts have adopted the federal ripeness policy."). This "final determination requires at least one meaningful application." Taylor, 659 So.2d at 1173.
In practice, the ripeness doctrine has precluded takings claims when the regulatory agency denies a landowner's application to develop a substantial project, and the landowner never applies for a less intensive use. See, e.g., MacDonald, Sommer & Frates, 477 U.S. at 352-53, 106 S.Ct. 2561; Williamson County Reg'l Planning Comm'n, 473 U.S. at 187-88, 105 S.Ct. 3108. Conversely, when a regulatory takings claim is ripe, "it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty." Palazzolo, 533 U.S. at 620, 121 S.Ct. 2448. Thus, in Palazzolo, even though the landowner's applications did not explore every possible development use of the property, his claim was ripe because the regulatory agency's decisions on the applications submitted left no doubt as to the permitted use of the property. See id. at 621, 121 S.Ct. 2448. The Court explained:

Williamson County's final decision requirement responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer. Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 738, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997). While a landowner must give a land-use authority an opportunity to exercise *571 its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened. The case is quite unlike those upon which respondents place principal reliance, which arose when an owner challenged a land-use authority's denial of a substantial project, leaving doubt whether a more modest submission or an application for a variance would be accepted. See MacDonald, supra, at 342, 106 S.Ct. 2561 (denial of 159-home residential subdivision); Williamson County, 473 U.S., at 182, 105 S.Ct. 3108 (476-unit subdivision); cf. Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (case not ripe because no plan to develop was submitted).
These cases stand for the important principle that a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation. Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established. Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision.
Id. at 620-21, 121 S.Ct. 2448 (citations omitted).
As the Palazzolo court noted, a "futility exception" exists to the ripeness requirement that we have similarly acknowledged in City of Riviera Beach v. Shillingburg, 659 So.2d 1174, 1180 (Fla. 4th DCA 1995). There we explained:
A limited exception to the ripeness requirement might exist where, by virtue of the past history, repeated submissions would be futile. Further, where the governmental agency effectively concedes that any other development would be impermissible, this can negate the requirement of pursuing further administrative remedies and the governmental action is effectively treated as a final decision.
Id. at 1181 (citation omitted); accord Palazzolo, 533 U.S. at 622, 121 S.Ct. 2448 ("Ripeness doctrine does not require a landowner to submit applications for their own sake."). For example, in Taylor v. Riviera Beach we held the landowner's taking claim was ripe where it would have been futile to seek an amendment to a comprehensive plan after the same had already been considered and rejected. 801 So.2d at 263.
Based upon the foregoing, we proceed to determine whether the trial court properly concluded Lost Tree's claims were unripe, requiring it to dismiss all of them. The ripeness requirement, however, does not apply to facial takings, as the mere enactment of the regulation constitutes the taking of all economic value to the land. See Glisson v. Alachua County, 558 So.2d 1030, 1036 (Fla. 1st DCA 1990). Therefore, we first analyze those counts Lost Tree claims to be facial takings to determine whether they were required to be ripe to proceed.

*572 Facial Takings Claims

Counts I through III, titled the "per se" takings claims against the City and Town, allege that the regulations deprive Lost Tree of all, or substantially all, of the economic value of its property. According to Lost Tree's initial brief, it intended these counts to be causes of action for a facial taking. A facial taking occurs when the "mere enactment" of the regulation constitutes a taking of all economically viable use of a party's land. See Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). In Taylor v. Village of North Palm Beach, Judge (now Justice) Pariente succinctly stated the difference between facial or "per se" takings claims and "as-applied" or balancing of interest takings claims:
Generally, takings challenges fall broadly into two categoriesfacial takings claims and as-applied claims. In a facial takings claim, the landowner maintains that the mere enactment of the regulation constitutes a taking of all affected property without adequate procedures to provide prompt, just compensation. In an as-applied claim, the landowner challenges the regulation in the context of a concrete controversy specifically regarding the impact of the regulation on a particular parcel of property.
659 So.2d at 1170-71 (citations omitted). As the Supreme Court recently emphasized in Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 1483, 152 L.Ed.2d 517 (2002), the deprivation of economic value required for a facial takings claim is:
[L]imited to "the extraordinary circumstance when no productive or economically beneficial use of the land is permitted." [Lucas], 505 U.S. at 1017[, 112 S.Ct. 2886]. The emphasis on the word "no" in the text of the [Lucas] opinion was, in effect, reiterated in a footnote explaining that the categorical rule would not apply if the diminution in value were 95% instead of 100%. Id. at 1019, n. 8[, 112 S.Ct. 2886]. Anything less than a "complete elimination of value," or a "total loss," the Court acknowledged, would require the kind of analysis applied in Penn Central. Lucas, 505 U.S. at 1019-20, n. 8[, 112 S.Ct. 2886].
(Underlined emphasis added) (footnote omitted).
Here, the allegations state that all or substantially all of the economic value of the property has been taken. Thus, according to Tahoe an allegation that substantially all of the value is taken may, in and of itself, require a ripeness analysis. However, because the substance of Lost Tree's allegations suggest a deprivation of all economic value we consider the allegations sufficiently pled the necessary predicate for a facial takings claim.
Nevertheless, we conclude that the claim does not state a facial takings claim because the mere enactment of the regulations does not preclude all development in all cases. Rather, only when it is applied to the concrete controversy in this case can it constitute a taking. That is, development of the islands in the Town is prevented only if bridge access is obtained through a bridgehead in the City. It does not prohibit development if a bridgehead is established in the Town. The regulations therefore do not prohibit all development of the Inner Islands.
With respect to the Outer Islands within the Town, Lost Tree claims all development is precluded on those islands where the Town's regulations prohibit development without bridges and the Board of the Internal Improvement Fund will not *573 permit a bridge over Gifford Cut to the Outer Islands. This too fails as a facial claim. Lost Tree's claim does not allege any facts to demonstrate that a bridge over Gifford Cut is the only location to construct a bridge to the Outer Islands.
Likewise, Lost Tree has failed to allege a facial claim as to the Outer Islands within the City. The complaint alleges that the R-1AAA zoning and "no bridgehead" provisions preclude all economically viable use of that property. However, the Outer Islands within the City are not subject to the Town's "no development without bridges" provision, allowing development consistent with the R-1AAA zoning laws without bridge access. While such zoning is admittedly restrictive, development is still permitted. Because no facial taking has been, or can be, shown as to those islands in counts I through III, dismissal was proper.

As-Applied Takings Claims
In order to succeed in stating an as-applied takings claim, Lost Tree must show that it obtained a final decision on the permitted use of the land, which requires at least one meaningful application, see Taylor v. Village of N. Palm Beach, 659 So.2d at 1173, or that it is futile to submit additional applications in light of past history or the expressly stated view of the appropriate governmental entities. See, generally, Palazzolo, 533 U.S. at 622, 121 S.Ct. 2448; Taylor v. Riviera Beach, 801 So.2d at 263.
At the outset, Lost Tree admits that it made no application for development of the Outer Islands within the City. While Lost Tree complains that the density and open space requirements severely limit development, until the "extent of permitted development" is determined by application to the City, an evaluation of what has been taken cannot be made. Palazzolo, 533 U.S. at 618, 121 S.Ct. 2448. Therefore, an as-applied challenge is not ripe. Moreover, although the City does not allow a bridgehead within its boundaries to provide access to the islands, there is nothing in the record to suggest that some development will not be permitted on the Outer Island with access by ferry or other boat.
With respect to the Inner Islands within the Town, Lost Tree alleges that the combined effect of the City's and Town's regulations effectively preclude any possible development on these islands because the only possible bridgehead to the Islands is within the City, which has barred bridges, but the Town's regulation requires bridge access to the islands. Lost Tree submitted applications to develop the Inner Islands. Those applications proposed a fifty-seven home development on the Inner Islands, despite the zoning allowing only eighteen homes. At the same time, Lost Tree was contesting the Town's Comprehensive Plan, which prohibits island development without bridge access. That challenge was unsuccessful, as the DCA approved the Plan.
Lost Tree's quandary is similar to what occurred to the land owner in Palazzolo, motivating the Supreme Court to solidify the futility exception in regulatory takings law. Palazzollo, the landowner, had submitted multiple applications for permits to fill and develop certain coastal wetlands, and with each successive application, Palazzolo sought a less intense use. Despite the existence of less intensive uses that he had not yet applied for, Palazzolo brought an action against the Rhode Island Coastal Resources Management Council alleging its denial of his applications constituted a taking. Consequently, the Rhode Island Supreme Court held, inter alia, that his claim was not ripe. See Palazzolo, 533 U.S. at 616, 121 S.Ct. 2448. The Supreme Court disagreed, stating:

*574 With respect to the wetlands on petitioner's property, the Council's decisions make plain that the agency interpreted its regulations to bar petitioner from engaging in any filling or development activity on the wetlands, a fact reinforced by the Attorney General's forthright responses to our questioning during oral argument in this case. The rulings of the Council interpreting the regulations at issue, and the briefs, arguments, and candid statements by counsel for both sides, leave no doubt on this point: On the wetlands there can be no fill for any ordinary land use. There can be no fill for its own sake; no fill for a beach club, either rustic or upscale; no fill for a subdivision; no fill for any likely or foreseeable use. And with no fill there can be no structures and no development on the wetlands. Further permit applications were not necessary to establish this point.
Id. at 621, 121 S.Ct. 2448 (citations omitted) (emphasis added).
As evidence of the futile nature of making further efforts or applications in this case, Lost Tree relies upon the municipal provisions that effectively prohibit any development (the no bridgehead and no development without a bridge provisions), the municipalities steadfast defense of those provisions, and the municipal officials' express statements that they will prohibit development. Similar to Palazzolo, the unique circumstances in this case demonstrate that further applications to develop the Inner Islands would be futile.
Just as in Taylor v. Riviera Beach, the landowner was not required to apply for an amendment to the appropriate comprehensive plan to ripen a takings claim because Riviera Beach had already considered and rejected such an amendment, making the application futile. 801 So.2d 259, 263. See also Gardens Country Club v. Palm Beach County, 712 So.2d 398, 401 (Fla. 4th DCA 1998) (County's continued refusal to certify application under existing comprehensive plan while requiring that all developments comply with proposed revised comprehensive plan show futility of further applications under existing plan, making case ripe for review).
This case presents an even stronger basis for application of the futility exception than Taylor v. Riviera Beach or Gardens Country Club. Here, Lost Tree intervened in the DCA proceedings, to challenge the City's and Town's efforts to include provisions in their respective Comprehensive Plans which effectively precluded developing the Inner Islands. Both the City and Town steadfastly defended those provisions in the DCA for nearly a decade. It is now beyond the point of mere speculation that both entities would refuse to remove those provisions. Accordingly, it would be futile to require Lost Tree to apply for amendments to the respective Plans to remove those provisions.
Despite its apparent position against developing the islands, the City asserts that Lost Tree cannot invoke the futility exception when it has never sought to amend the City's Comprehensive Plan and remove the "no bridgehead" provision. This begs the question Lost Tree has invoked the futility exception precisely because seeking to amend the Plan would be futile. Regardless, Lost Tree did challenge efforts to include that provision in the Plan for the last decade and should not be required to apply to remove it now.
As for any claim that it would be futile to apply to develop the Outer Islands, either within the City or Town, such a claim must fail. In Tinnerman v. Palm Beach County, 641 So.2d 523 (Fla. 4th DCA 1994), this court held that "[f]utility is not established until at least one meaningful application has been filed." 641 *575 So.2d 523, 526. Because Lost Tree has not even formulated a proposed plan to develop the Outer Islands to submit to the City or Town, any as-applied claims as to the Outer Islands have not ripened.
In sum, we conclude that the complaint states a cause of action based upon the futility exception to the ripeness requirement. Specifically, the ripeness doctrine does not preclude review of Lost Tree's as-applied regulatory takings claims as to the Inner Islands and Outer Islands within the Town. The extent of permitted use of the Inner Islands is now fully known as a result of Lost Tree's applications, its failed challenges in the DCA proceedings, and the City's and Town's positions before the DCA and Cabinet. However, the as-applied claims as to the Outer Islands are not ripe.

Taking of Access
Finally, Lost Tree's complaint alleges the City took its means of vehicular access to the Islands by enacting its no-bridgehead regulation where the only means of vehicular access to the Islands is the Silver Shore Road in the City (count VII). It relies upon Palm Beach County v. Tessler, 538 So.2d 846, 849 (Fla.1989), in which the supreme court explained:
There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist.
(Emphasis added). Here, Lost Tree specifically alleges that "Silver Shores Road is the only means of vehicular access to the Lost Tree Islands"; and because the City's "no bridgehead" provision precludes building a bridge from Silver Shores Road to the islands, the City has "deprived Lost Tree of all ability to access its property." Assuming as we must the truth of the factual assertions of the complaint on a motion to dismiss, Lost Tree has alleged a valid claim that its access to the islands has been "substantially diminished." Although the City argues that the complaint alleges it issued a permit to build the bridge subject to rescission of the "no bridgehead" ordinance, given Lost Tree's unavailing efforts to challenge the City's "no bridgehead" provisions in its Comprehensive Plan for more than ten years, we conclude that, on its face, the complaint sufficiently alleges the futility exception to the ripeness requirement. We therefore reverse the dismissal of Lost Tree's taking of access claim for further proceedings.
We affirm without further analysis the dismissal of the remaining counts alleging arbitrary and capricious substantive due process claims and equal protection claims. They do not allege facial claims, and Lost Tree has failed to advance any argument on appeal as to how they should proceed as as-applied claims.
The City raises several other judicial doctrines that it claims require affirmance of the dismissal of Lost Tree's complaint. These doctrines, however, require us to consider factors beyond the four corners of the complaint. We therefore decline to address them without prejudice to raising these issues on remand in the trial court.
*576 In sum, we hold that Lost Tree's complaint states causes of actions for as-applied takings claims of the Inner Islands but not the Outer Islands and for a taking of access claim. We hold that it does not state a cause of action for a facial takings claim or the other claims raised. We therefore reverse and remand for further proceedings consistent with this opinion.
STEVENSON and HAZOURI, JJ., concur.

NOTES
[1] A separate action between Lost Tree and the IITF concerning title to some of the submerged land around the Lost Tree Islands is ongoing. After being remanded for further proceedings in Board of Trustees of the Internal Improvement Trust Fund v. Lost Tree Village Corp., 805 So.2d 22 (Fla. 4th DCA 2001), the trial court ordered a new survey to determine the exact boundaries of the islands.