CORTINAS, J.
 

 In 1978, Mr. and Mrs. McCole purchased a platted lot (the “Property”) in an area that was, at the time, in unincorporated Monroe County (the “County”). The Property was zoned RU-1, single-family residential.
 

 In 1986, Monroe County adopted the State Comprehensive Plan (the “State Plan”). While the zoning designation of the Property remained unchanged, the State Plan added wetland protection measures to the County’s land development regulations. With the adoption of the State Plan also came the introduction of the beneficial use determination (“BUD”) process. The BUD process allowed the County to modify land development regulations and take measures so that the implementation of the State Plan did not result in an unconstitutional taking of a landowner’s property.
 

 In 1989, the McColes sought authorization from the State’s Department of Environmental Regulation (“DER”) to build a home on the Property. That same year, the DER denied their permit application, noting that its inspection of the Property showed the presence of various types of wetlands vegetation. The denial specified that “in lieu of the residence and driveway, it may be possible to construct a pile supported, four foot wide boardwalk on the lot in order to gain access to the canal” and also advised the McColes that administrative and judicial review were available to parties whose interests were affected by the permit denial.
 

 Approximately one month after the DER’s denial, the County’s Growth Management Department denied a separate application by the McColes to build a single-family house on the Property. The County cited existing wetlands and vegetation as the reason for denying the permit and also specified that any decision rendered was subject to appeal. The County’s denial stated that “[i]t is felt that a single family residence cannot be permitted.” The McColes took no action to appeal the permit denial or file a BUD application until fourteen years later.
 

 In September 2003, the McColes filed a BUD application asserting the loss of all beneficial use of the Property because of the wetland-related prohibitions on development. In August 2005, a proposed denial of BUD was issued by a Special Master after a hearing, primarily because of the McColes’ lack of action with respect to the development of the Property. Approximately one month later, the City of Marathon (the “City”), which was incorporated
 
 *752
 
 in 1999, adopted the proposal and denied the BUD application. In December 2005, the McColes filed a complaint for inverse condemnation against the City.
 

 In January 2007, the McColes submitted a new permit application to Florida’s Department of Environment Protection (“DEP”), the successor to the DER, seeking permission to build a single-family home on the Property. The State denied the 2007 Application, citing environmental concerns. The McColes thereafter sued the State for inverse condemnation in December 2007. In 2008, summary judgment was entered in favor of the State and the City after the trial court found that the claims were time-barred by the statute of limitations. This appeal followed.
 

 We review the order granting summary judgment de novo.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126 (Fla.2000). The situation in Monroe County is unique in that the BUD process allows landowners to obtain a determination of whether they have been deprived of all beneficial use of their property. The potentially problematic aspect of the BUD process is that ordinances allowing the procedure do not set forth a clear limitations period for the filing of a BUD application. As such, landowners may be left in a situation similar to that of the McColes’ whereby they obtain permit denials but take no further action for several years. Although the BUD process provides no specific limitations period, it cannot operate to revive an inverse condemnation claim that is otherwise barred by the statute of limitations. Section 95.051, Florida Statutes, enumerates eight specific grounds for tolling limitations periods. None of those are applicable here.
 
 See Hearndon v. Graham,
 
 767 So.2d 1179, 1185 (Fla.2000).
 

 Claims for inverse condemnation fall within the four-year limitations period set forth by Chapter 95, Florida Statutes, which provides, in pertinent part, as follows:
 

 95.11 Limitations other than for the recovery of real property. — Actions other than for recovery of real property shall be commenced as follows:
 

 [[Image here]]
 

 (3) WITHIN FOUR YEARS.—
 

 [[Image here]]
 

 (p) Any action not specifically provided for in these statutes.
 

 In order to determine whether a limitations period has begun to run, we must necessarily look to the events that would trigger the ripeness of the claim. Other jurisdictions have held that a final determination in the form of a permit denial from a municipality is sufficient to commence the limitations period on a particular claim. See
 
 Lost Tree Vill. Corp. v. City of Vero Beach,
 
 838 So.2d 561 (Fla. 4th DCA 2002);
 
 Taylor v. City of Riviera Beach,
 
 801 So.2d 259 (Fla. 4th DCA 2001). If a landowner obtains a permit denial with a clear indication that all beneficial use has been lost, then any claim must be filed within four years from the time of the permit denial or the resolution of an appeal of the permit denial. “Once it becomes clear that the government authority ‘lacks the discretion to permit any development, or [that] the permissible uses of the property are known to a reasonable degree of certainty,’ it is only then that a takings claim is likely ripe.”
 
 Collins v. Monroe County,
 
 999 So.2d 709, 716 (Fla. 3d DCA 2008) (quoting
 
 Palazzolo v. Rhode Island,
 
 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)) (emphasis added).
 

 Furthermore,
 

 [t]he Monroe County BUD Ordinance itself answers the ripeness question. The BUD Ordinance was designed as a way to avoid constitutional takings law
 
 *753
 
 suits by providing other means of compensating for total or partial regulatory loss of economically beneficial use of property. In this way, the BUD ordinance differs from land use regulations in other jurisdictions in that it accounts for both facial and as-applied takings, as seen in its bifurcated relief of either outright purchase of the property (in the case of a per se taking) or grant of Transferable Development Rights (TDRs), Rate Of Growth Ordinance (ROGO) points, variances and building permits (in the case of an as-applied taking).
 

 Id.
 

 In
 
 Shands v. City of Marathon,
 
 999 So.2d 718, 727 (Fla. 3d DCA 2008), we held that the City of Marathon’s denial of the Shands’ BUD application was sufficient to cause the statute of limitations to run. In
 
 Shands,
 
 the property at issue was purchased in 1956, and title was ultimately conveyed to the plaintiffs in 1985. No development action was taken until 2004 when the Shands filed a permit application to build a dock on their property. The permit application was denied, “referring to the City’s prohibition on development in areas classified as high quality hammocks, or areas with known threatened or endangered species.”
 
 Id.
 
 at 721. Following the denial, the Shands filed a BUD application and the Special Master recommended that the City either grant an exemption from the Rate of Growth Ordinance in place at the time or purchase the property for a mutually agreeable sum.
 
 Id.
 
 at 721-22. In 2007, after a public hearing, the City rejected the Special Master’s recommendations and denied the BUD application. The Shands then filed suit against the City, and we reversed the trial court’s dismissal of the complaint on ripeness grounds. In
 
 Shands,
 
 we stated that:
 

 As an as-applied taking claim, we first determine that the Shands’ federal claim is ripe for review, contrary to the trial court’s conclusion. “Florida courts have adopted the federal ripeness policy.” An as-applied takings claim challenging the application of a land use ordinance is not ripe until the plaintiff has obtained a final decision regarding the application of the regulations to the plaintiff’s property. The Shands obtained a decision as to the application of the regulations to the property when they went through the BUD process and obtained a decision from the Marathon City Council.
 

 Id.
 
 at 725 (internal citations omitted). We further noted that a “final determination” requires at least one meaningful application and that the “[t]he Shands did this by filing for a dock permit, and when denied, by appropriately filing the required BUD application with the government entity charged with implementing the regulations.”
 
 Id.
 
 at 726. Moreover, “it was futile, under the regulatory conditions prevailing at the time, for the Shands to seek further permits to develop the property.”
 
 Id.
 

 In the case before us, the McColes were denied permits by both the State and the County but took no further action until fourteen years later when they filed their BUD application, well after the four-year limitations period.
 
 Shands
 
 echoes
 
 Taylor,
 
 which provides that an as-applied taking claim becomes ripe, and therefore accrues, when an owner has made a “meaningful application” regarding the use of his land to the appropriate governmental entity and a final determination as to the extent of permitted development.
 
 Taylor,
 
 801 So.2d at 262-63. Once a clear determination has been made as to the permissible use of a property, as in the case before us with the determination that “a single family residence cannot be permitted,” then the limitations period begins to run and
 
 *754
 
 any further actions by the landowner, including the filing- of a BUD application, must be performed during the four-year limitations period.
 
 See also Sutton v. Monroe County,
 
 34 So.3d 22 (Fla. 3d DCA 2009) (holding that the landowner’s claim became ripe after her administrative appeal of a permit denial, not when a BUD was rendered).
 

 In ascertaining what constitutes a clear or final determination of the permissible use of a property, we must also examine whether further attempts at obtaining approval would be fruitless.
 

 In order to succeed in stating an as-applied takings claim, [the landowner] must show that it obtained a final decision on the permitted use of the land, which requires at least one meaningful application, or that it is futile to submit additional applications in light of past history or the expressly stated view of the appropriate governmental entities.
 

 Lost Tree Village,
 
 838 So.2d at 573 (Fla. 4th DCA 2002) (emphasis added) (citations omitted). Once a landowner has been denied a permit and in no uncertain terms has been advised by a governmental entity that a particular use of that property, such as a single family residence, is not permissible due to land use regulations, it becomes clear that further attempts at obtaining permits in the future, especially in light of more restrictive ordinances, would be futile. As such, once a clear determination has been made by a governmental entity as to permit application for land use or development, the statute of limitations for an inverse condemnation action begins to run. At that point, the landowner must then appeal the permit denial or file a BUD application prior to the expiration of the four-year limitations period.
 

 Based upon the foregoing, we affirm the summary judgment in favor of the City and State.
 

 Affirmed.