621 So.2d 469 (1993)
Aphrodite E. KARATINOS and Nicholas E. Karatinos, Appellants,
v.
TOWN OF JUNO BEACH, Florida, and Florida Department of Natural Resources, Appellees.
No. 92-0673.
District Court of Appeal of Florida, Fourth District.
April 14, 1993.
On Motion for Rehearing August 11, 1993.
*470 H. Laurence Cooper, Jr., West Palm Beach, for appellants.
Bernard A. Conko of Cohen, Chernay, Norris, Morici, Weinberger & Harris, North Palm Beach, for appellee-Town of Juno Beach, Florida.
KLEIN, Judge.
The Karatinos, who owned unimproved oceanfront property, sued the Town of Juno Beach and the Florida Department of Natural Resources (DNR), contending they were being deprived of all use of their property. Their claim against DNR was for inverse condemnation, and their claim against the town was for declaratory relief and damages pursuant to 42 U.S.C. § 1983. In 1991 DNR purchased the property and was then dismissed from the case. The Karatinos tried their claim for damages against the town alleging they were deprived of the use of their property from 1982 to 1985 as a result of the town's wrongful refusal to allow them to build. The trial court found against them, and we affirm.
The Karatinos purchased their property in 1958, intending to build rental units or a small motel in the future. The property has 209 feet of oceanfront and the western border (abutting A1A) is approximately 200 feet from the water's edge.
In 1979 DNR established its Coastal Construction Control Line in Palm Beach County, prohibiting construction east of the line unless DNR granted a permit. This line ran approximately 20 feet east of the western border of the Karatinos' property, leaving no room for development. Adding insult to injury, the town, shortly thereafter, established a setback line, 50 feet to the west of DNR's Coastal Construction Control Line, which was, of course, off the property.
In December, 1981, the Karatinos submitted an application to the town for site plan approval showing alternative developments of from two to ten units, all of which violated the town's setback line. The town disapproved for that reason. The town setback ordinance had a procedure for obtaining modification; however one of the requirements was approval from DNR. The Karatinos then filed an application with DNR for permission to build over the Coastal Construction Control Line, but DNR refused to process the application until the Karatinos received approval from the town. A classic Catch-22.
In 1983 the Karatinos filed this lawsuit. In 1984 the Karatinos sought permission from the town to construct a six-unit project, and in 1985 the town approved two units for the property. In May, 1986, and again in May, 1987, DNR formally considered and denied appellants' application to build on their property.
In 1991 DNR purchased the Karatinos' property, but the Karatinos continued their *471 claim against the town, claiming they were improperly deprived of all use of their property by the town from 1982, when the town first turned their project down, to 1985, when the town approved two units. The town denied that it did anything improper and, in the alternative, argued that if its actions were improper they were not the cause of the Karatinos' damages. We agree with the town's alternative argument and therefore need not decide whether it acted properly.
Ralph Clark, a coastal engineer with DNR who administered Florida's coastal construction regulatory program during the years involved here, testified that DNR would never have permitted any building seaward of the Coastal Construction Control Line on this property. In the final judgment the court found as a matter of fact that the Karatinos would never have gotten approval from DNR to build seaward of the Coastal Construction Control Line and that accordingly the Karatinos' project "was doomed, regardless of the Town's action."
The Karatinos acknowledge there was evidence that DNR would never have allowed them to build, but argue that this does not preclude them from recovering damages for a temporary taking from 1982 to 1985. They argue that since DNR did not purchase the property until 1991, there was a possibility that DNR would have approved their project during 1982 to 1985. While this may have been a possibility, it cannot be the basis to reverse findings of fact supported by competent evidence that DNR would never have allowed anything to be built on this property.
Affirmed.
GLICKSTEIN, C.J., and ANSTEAD, J., concur.

ON MOTION FOR REHEARING
PER CURIAM.
Motion for rehearing is denied.
GLICKSTEIN and KLEIN, JJ., concur.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, concurring specially.
I concur in the denial of rehearing.
The appellants take issue, of course, with our holding that the trial court did not err in concluding they are entitled to no relief for the alleged "temporary taking" of their property by virtue of the confusion and delay created by the town in having the state consider the appellants' attempts to build. However, the town ordinance in question did not facially prohibit all development; rather, it made consideration of a request for development dependent upon the owner's securing state approval. Hence, there was a provision for development although it was confusing, because it had the approval procedure reversed from the procedure employed by the state. However, once that was straightened out, the town permitted development, whereas the state subsequently refused any development. Appellants, of course, were compensated by the state in a settlement.
There is no doubt that the town's ordinance and action delayed the owners' attempt to get a final answer to their request to develop. However, I would place this delay more in the category of the "normal delays" created by the myriad of governmental procedures mentioned by the Supreme Court in First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 321, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987), as not giving rise to a temporary taking or entitlement to compensation. Obviously, not every delay in the development process attributable to the government results in a "temporary taking." This is true even where the delay is the "fault" of the government. Here there was a snafu that was eventually worked out. In reality, and in the final analysis, it was the state's restriction on development, both by statute and by rule that prevented the owners from using their land, and not the actions of the town.