FARMER, J.
We reverse a summary judgment in favor of a municipality (City) and against a property owner (Owner) on inverse condemnation claims arising from the City’s failure to permit conversion of the proper *1029 ty to a different use. In so doing, we reject the City’s argument that the County was an indispensable party to the claim alleged and that the inverse condemnation claims were not ripe.
In 1989, Owner purchased 214 acres of property. Approximately half of it is being used as a golf course, with the remaining half lying undeveloped. Relying on the representations of a City employee, Owner says that it purchased the property with the expectation that it could be converted to a single-family residential usage. Yet, when Owner purchased the property, it was designated commercial recreation under the Comprehensive Land Use Plans of both City and Broward County, permitting uses such as golf courses, tennis clubs, sports arenas, marinas, and dog or horse racing facilities.
On four separate occasions in 1990,1991, 1992, and 1994, Owner submitted applications to the City to amend the land use designation to low residential use to permit rezoning of the property and the development of a single-family residential subdivision on less than a third of the property. The City denied all of Owner’s applications.
In addition to the applications for land use plan amendment, in 1991 Owner applied for a building permit to install netting for a driving range and, in 1992, also submitted an application for building and electrical permits to install lights and lighting stanchions, together with safety netting, on part of the golf course. The City denied both applications. In 1994, Owner also petitioned Broward County to change the designation under the County’s land use plan to low residential. The County denied the petition.
Regarding Owner’s land use amendment applications from 1990 through 1994, the City maintained that the applications were inconsistent with the policies set forth in its land use plan, specifically with Policy 1.11.5, providing that “golf courses in the City, designated Commercial Recreation, are principal open spaces and shall not be converted to other uses.” With respect to the applications for building and electrical permits, the City claimed that the proposed construction would interfere with the view and light enjoyed by residents of the surrounding (residential) property.
Finally, Owner filed suit against the City seeking damages for inverse condemnation as a taking without compensation and a denial of due process. Owner also sought a declaratory judgment as to the constitutionality of the application of the City’s land use and zoning regulations to Owner’s property. The trial court entered a final summary judgment of dismissal. Owner appealed. In Golf Club of Plantation, Inc. v. City of Plantation, 717 So.2d 166 (Fla. 4th DCA 1998), we affirmed the dismissal of the declaratory judgment claim, holding that by seeking damages from inverse condemnation Owner waived any challenge to the validity of the City’s restrictions. We reversed the dismissal of the other claims, however, holding that Owner should have been granted leave to amend the takings claim, and that the City was not entitled to summary judgment on the due process claim.
On remand, Owner filed an amended complaint. As before, it alleged a takings claim arising under both the United States and Florida Constitutions;[1] and a due process claim also arising under both constitutions.[2] The City moved for summary judgment, arguing that it could not be *1030 liable for taking Owner’s property because Owner had failed to obtain the County’s approval to amend its land use plan and that Owner had failed to sue the County before the expiration of the statute of limitations. The City also argued that Owner’s inverse condemnation claims were not ripe for judicial review because Owner never applied for any of the alternative permissible uses for its property authorized under the “Commercial Recreation” designation of the City’s land use plan. Consequently, the City argued that the extent of the alleged taking could not be determined. The trial court granted the City’s motion and entered a final judgment of dismissal. The court held that the County was an indispensable party; that the case was not ripe; and that the corporate plaintiff had been dissolved. This appeal follows.
We start with the last ground first, the one holding that Owner is barred from bringing this suit because it was summarily dissolved by the State of Florida for failing to file one or more annual reports and pay the taxes. The trial court’s holding was based on Vacation Break of Boca Raton, Inc. v. Breeden, 765 So.2d 281 (Fla. 4th DCA 2000). The issue decided in Vacation Break is the subject of a recent en banc decision of this court. See Nat'l Judgment Recovery Agency, Inc. v. Harris, 826 So.2d 1034 (Fla. 4th DCA 2002) (holding that a corporation which has been administratively dissolved by the state for failure to file its, annual report is not required to obtain reinstatement to active corporate status to bring or defend a lawsuit), receding from Vacation Break. Under National Judgment Recovery, Owner is not barred from court and may prosecute this action. It is therefore necessary to address the other two contentions.
On the merits, Owner argues that the trial court misapplied City of Riviera Beach v. Shillingburg, 659 So.2d 1174 (Fla. 4th DCA 1995), and Karatinos v. Town of Juno Beach, 621 So.2d 469 (Fla. 4th DCA 1993), in dismissing its case. It suggests that the trial court mistakenly believed that Owner’s inverse condemnation claims were based solely on the City’s failure to grant Owner’s four residential use applications for rezoning. In truth, Owner asserts, its damages claims are founded on its contention that the City condemned its property from any other use by virtue of Policy 1.11.5 stating that the “golf courses in the city, designated Commercial Recreation, are principal open spaces and shall not be converted to other uses.” [e.s.] Thus Owner claims that it has been entirely precluded from setting its property to any residential or other recreational use purely as a result of Policy 1.11.5.
Owner did in fact plead the denials of its four residential use applications in its amended complaint, and asserted them in its own motion for summary judgment. This was necessary, Owner argues, to meet the ripeness requirements for bringing inverse condemnation claims. Owner points out that the Broward County land use plan contains a provision allowing the conversion of its golf course property to residential use by something called “flex units.” Under Policy 1.11.5, however, no other use is possible within City’s jurisdiction regardless of the County’s flex units. Owner argues that, but for Policy 1.11.5 and apart from residential uses, it could have used the property for a tennis club, sports arena, marina, a dog or horse racing track, marine amusement center, Jai-Alai fronton, or other similar recreational uses. City, in turn, responds that Owner never submitted any applications for any of these alternative uses, and thus Owner’s inverse condemnation claims are not ripe for judicial review. Because Broward County has no such requirement, Owner responds, it is only the City against whom an inverse condemnation claim could or should be made. We agree with Owner.
*1031 There is no suggestion by the City that its policy of barring all conversions of golf courses to any other uses has been imposed on it by Broward County. In fact, the record shows that the County has no such policy. As Owner pointed out at oral argument, if the City approved an alternative use that complied with the County’s comprehensive plan, there is a strong probability that County would approve the City’s change of its own plan. We note that the City did not attempt to challenge the correctness of this assertion. Even if the City did dispute the accuracy of the representation, such a factual dispute is not subject to summary determination. Owner would be allowed to present its evidence establishing that if the City approved a residential usage the County would as well.
For that reason, City of Riviera Beach v. Shillingburg, 659 So.2d 1174 (Fla. 4th DCA 1995), is not controlling. In Shilling-burg, the owner sought permission to fill submerged lands running between Singer Island and the intracoastal waterway, described as “mangroves and special estuarine bottom lands...protected by federal, State and local agencies involved in the wetlands preservation.” This filling would have required the separate approval of both state and federal agencies. There was no factual basis to believe that these agencies would give their approval even if municipal approval had been granted. In fact the city ordinance in question expressly stated that its policy before any state or federal agencies would be to oppose any applications for permits to fill the lands. Karatinos is similarly inapposite because there the city’s law expressly made its approval dependent on the state agency’s approval. No such requirement exists in this case.
City argues that even if flex units would have permitted a conversion to some form of residential use, it was necessary for Owner to make proper application for a specified use before its claims would be ripe. Similarly, City argues that Owner was required to apply for a specific recreational use for its damages claim to be ripe for adjudication. We disagree.
The City has made it clear beyond doubt that its ban against converting golf courses is absolute and that it will not approve conversions of any kind. Its position does not depend on the nature of any proposed alternative use. City bans all golf course conversions to any other uses. Hence City’s protest that Owner should first make full application for a specified, other residential or recreational use amounts to an insistence that Owner perform a futile (not to mention expensive) and (in this case) duplicative act. Owner has already made four separate applications for approval of a residential use, and all have been denied on the basis of Policy 1.11.5.
No application for an alternative recreational use has been made, but it is also abundantly clear from this record that any such application would be futile. If the City would not permit Owner to build a driving range on its golf course because the change would interfere with the neighbors’ view of its green spaces, obviously City has thereby also disapproved a Jai-Alai fronton, sports arena, race track or other such usage that would destroy the view entirely. City’s ban against changing this golf course use is absolute and does not turn on the nature of another use. All further applications are futile.
We therefore reverse the summary judgment and return the case to the trial court for consistent proceedings.
STEVENSON and HAZOURI, JJ., concur.

. U.S. Const, amend. 5; Fla. Const, art. X, § 6.

. U.S. Const, amend. 14; Fla. Const, art. I, § 9.